[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff (the wife) commenced this action for the dissolution of her marraige from the defendant (the husband) in a complaint returnable on November 18, 1997. The parties had two wedding ceremonies, the first in a civil ceremony on March 20, 1993, and a second in a church ceremony on July 30, 1993. There are no children born of this marriage. Both parties have resided in this state for more than one year, therefore, the court has jurisdiction.
There was the usual contradictory testimony as to who was at fault for the breakdown of the marriage. The wife, her mother, and two sisters testified that the husband abused her emotionally by criticizing her cooking, her work habits, and for being overweight. His brother Ziad, and a life-long friend of the wife, both testified that he was a hard-working husband, demonstrated CT Page 2259 love for her, and did all he could to satisfy her needs. The wife also claimed the husband had received a notice of deportation from the Immigration Service shortly before the marriage, and that he entered fraudulently into the marriage to avoid being deported to Lebanon. The court believed her testimony that she did assist him in completing the documents required in his obtaining American citizenship, but finds no fraudulent intent by the husband in marrying her. He was engaged to her for about one year before the marriage, and had given her a two carat engagement ring as proof of his love and commitment. From all the testimony presented, the court finds the cultural differences and the disparity in their educational backgrounds were the primary causes for the marital breakdown. The court finds neither party at fault, and enters a decree of dissolution on the ground of irretrievable breakdown pursuant to § 46b-40(c)(1) of the Connecticut General Statutes.
The court finds the following background facts are not in dispute. Shortly after the marriage, the parties rented an apartment and two garages from her parents for $300 a month. The wife's father testified and claimed he has rented five similar apartments on this street for $800 a month, or about $500 less than the market value. The husband testified he made repairs and improvements to the apartment in exchange for the reduced rent. The court finds the reduced rent was in consideration of the repairs and improvements and was a gift to help them get started in the marriage. The court rejects the wife's claim for reimbursement of the reduced rent.
The husband is a self-employed carpenter. In his financial affidavit dated January 27, 1999, he lists a gross weekly income of $500, after business expenses, with deductions for taxes, he has a net weekly income of $374. He claims weekly living expenses of $444.55. His total net assets are $11,800, with bank accounts and savings bonds totaling $1300. His primary asset is one-half interest in a 1996 Jeep Cherokee, and claims a net equity of $7000, subject to a $7000 loan.
The wife is employed as an elementary school teacher in Danbury, and in her financial affidavit, she shows a gross weekly income of $630.58, and after deductions earns a net weekly income of $484.44. Her total assets are $19,236.42, with $100 in a savings account and $500 in savings bonds. Her primary asset is the same 1996 Jeep Cherokee valued at $17,000, subject to a loan of $7363.58, for a net equity of $9636.42. Her cash assets are CT Page 2260 listed at $600, and the husband's are $1300. These assets are obviously minimal, both claiming the primary asset is the 1996 Jeep Cherokee.
The husband is thirty-two years old, a high school graduate in good health, who works full-time as a self-employed carpenter contractor with a net weekly income of $374. The wife is twenty-eight years old, and also enjoys good health, and works full-time as an elementary teacher and earns a net weekly income of $418.58, about $44 more per week than the husband. She has earned a masters degree in elementary education from the University of Bridgeport. In her claims for relief, the wife requests a nominal periodic alimony award of one ($1) dollar per year.
This is a relatively short marriage of about six years. Both parties are young adults enjoying good health, earning about the same net weekly income.
The court has considered all of the criteria set forth in § 46b-82 of the Connecticut General Statutes (the alimony statute), and the applicable case law, and finds both parties capable of supporting themselves, and therefore shall not award periodic alimony to either party.
From the limited assets shown on their respective financial affidavits, this case should have been easy to settle. However, it was complicated because the husband and his brother Ziad had opened, closed, and rolled-over some thirty-three savings accounts at Nutmeg Federal Savings Bank of Danbury between 1985 when the first account was opened, to June 6, 1997, when the last joint account of $80,037.88 was closed and the proceeds divided. Over these twelve years, they each made deposits and withdrawals from these accounts. However, no evidence was offered as to the amount each contributed. It was undisputed that the wife had made no contributions to any of these accounts during the marriage.
The husband and his brother Ziad, came to Danbury from Lebanon in 1985, leaving their parents and other brothers and sisters in Lebanon. From their testimony, the court finds the following facts credible and probative. Between 1985 and 1997, they wired money to help support their family in Lebanon. In early 1997, they learned from the family there that their parents had incurred over $90,000 in medical expenses and were about to lose the family home. They decided to help them in paying these CT Page 2261 debts, and on June 6, 1997, they closed out and divided their only remaining joint savings account of $80,037.98, with $50,000 going to Ziad and $30,000 to the husband because he had withdrawn $10,000 to purchase the 1996 Jeep Cherokee shortly before this division.
From the exhibits in evidence and the testimony of both the husband and his brother Ziad, the court finds that Ziad wired $40,000 to his parents in Lebanon on June 10, 1997, and an additional $15,000 on November 20, 1997, for them to pay their medical expenses. On July 16, 1997, the husband wired them $20,000 for the same purpose. He also gave his sister $5000 to pay educational and other living expenses, and the remaining $5000 went to pay his personal bills. Their entire joint savings account of $80,037 was depleted in payment of these expenses. The court further finds that one-half of this savings account, or $40,000, was the husband's share, and marital property subject to distribution pursuant to § 46b-81 of the Connecticut General Statutes. The wife shall be entitled to receive 35 percent, or $14, 000, as her equitable share of this marital property as her non-monetary contributions to this marriage. O'Neill v. O'Neill,13 Conn. App. 300, 311 (1988).
The court has considered all the criteria set forth in §46b-81 (the assignment of property), § 46b-82 (the alimony statute), and § 46b-62 (attorney's fees), all the relevant case law, and issues the following orders:
1. For the reasons previously stated, neither party is entitled to an alimony award.
2. The husband shall transfer to the wife the 1996 Jeep Cherokee (in which he claims a net equity of $7000), and he shall be responsible to continue paying the $7000 loan on this Jeep. This grant is in satisfaction of her equitable share (35 percent or $14,000) in the $40,000 of marital property.
3. The parties shall equally divide the savings bonds valued at about $600, and each shall retain their own bank accounts.
4. The wife shall return to the husband a number of personal property items, including the Sony T.V., the VCR, his stereo, his bike and his brother's bike, and all personal belongings, including the husband's Lebanese license. The wife shall retain all of the remaining personal property which is already in her CT Page 2262 possession.
5. Each party shall be responsible for their own liabilities as listed on their financial affidavits.
6. The wife has the benefit of medical insurance as part of her employment. She should place the husband on the medical policy so that he will be entitled to COBRA benefits after the dissolution. The husband shall pay any amounts paid by the wife to keep him on the policy. After COBRA benefits become effective, he will pay the cost of the COBRA coverage.
7. Each party shall be responsible for their own attorney's fees.
8. The dog shall be awarded to the wife.
9. The wife's maiden name is restored to Kaback.
Petroni, J.